IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| United States of America | ) | |
| | ) | |
| | ) | 13 CR 952-1 |
| v. | ) | |
| | ) | Judge Kocoras |
| Eric Rogers , | ) | |
| Eric Curtis | ) | |

## <u>DEFENDANTS' REPLY TO GOVERNMENT'S RESPONSE TO <u>*DEFENDANTS' MOTION TO SUPPRESS ELECTRONIC LOCATION EVIDENCE*</u></u>

Eric Rogers , by attorney Michael James Falconer, and Eric Curtis by attorney Jack Rimland, makes the following Reply to the Government's Response to Defendants' motion to Suppress Electronic Location Evidence.

SUMMARY OF ARGUMENT

Although the court did not envisage a Reply  brief here, some things in the response just cannot go unanswered.

- A case, like Quartavious Davis, 12 - 12928, is persuasive authority because it is logically coherent and makes compelling use of precedent.  Even if withdrawn for *en banc* consideration the logic

1

retains its force.

- ■ The government has asked for and received both historical movement data and 'real time' movement data. They have in effect turned the defendant's cell phones into the functional equivalent of GPS trackers. This tracking is even more invasive than in *Jones* because the phone goes into more places and more private places than an automobile. *Jones*, applies with full force.

Government acquisition of historical cell-site records ("location data" or "location information") constitutes a search under the Fourth Amendment. Like the GPS tracking information the Supreme Court considered in *United States v. Jones*, 132 S. Ct. 945 (2012), location data reveals intimate information about users' personal lives and intrudes on reasonable expectations of privacy. As with wiretapping, acquisition of location data is hidden, continuous, indiscriminate, and intrusive. As a result, such acquisition must be subject to the extensive judicial oversight that the warrant requirement provides. Contrary to the government's claim of a broad third-party rule, cell-phone providers' storage of location data does not detract from reasonable expectations of privacy. Acquisition of historical records intrudes on reasonable expectations

2

of privacy as much as does real time monitoring; in fact, there may be no practical difference between the two. Because the government claims the ability to acquire location data without first procuring a warrant based on probable cause, this Court should suppress the resulting evidence

ARGUMENT

## I. GOVERNMENT ACQUISITION OF LOCATION INFORMATION IS A SEARCH UNDER THE FOURTH AMENDMENT

When the "government violates a subjective expectation of privacy that society recognizes as reasonable," it conducts a Fourth Amendment search. *Jones,* 132 S. Ct. at 954-55 (Sotomayor, J., concurring); *Katz v. United States*, 389 U.S.347, 361 (1967) (Harlan, J., concurring). Because government agents intrude upon a cell phone user's reasonable expectation of privacy when they acquire his location data, they must either obtain a warrant based on probable cause or establish an exception to the warrant requirement. The Supreme Court made clear in *Jones* that users have a subjective expectation of privacy in location data, notwithstanding that the data reveals activities in

3

public. Applicable precedents, including *Jones*, also support an objective expectation. Because law enforcement agents acquire location data in a manner that is hidden, continuous, indiscriminate and intrusive, it is a practice, like wiretapping, that requires extensive judicial supervision to protect Fourth Amendment rights.

### A. The Nature of Location Data

Before this court can assess reasonable expectations of privacy in location data, it must understand what location data is. In the present case, the government has argued that location data does not implicate constitutional privacy rights, *see,* Government's Response to Defendants' Motion to Suppress Electronic Location Evidence 6-11 (2/15/2012) (hereinafter "Gov. Response"), but it has not provided a clear statement on what the location data it seeks would reveal, and how the government can be sure that its acquisition will not intrude on privacy interests, particularly in light of the *Jones* decision. The government does not explain how the location data it seeks would be useful in its investigations but not intrusive enough to implicate the Fourth Amendment. As a matter of law, that acquisition of location data is a search under the Fourth Amendment. *United States v. Jones*

4

, ___ U.S.___, 132 S.Ct. 945(2012); *United States v. Davis*, ___ F.3d___, 12-12928 ( 11th Cir. 6.11.2014).. A recently published law review article on cell site location data, described the myriad factors that make the acquisition of location data intrude on private activities. *See* Susan Freiwald, *Cell Phone Location Data and the Fourth Amendment: A Question of Law, Not Fact*, 70 Md. L. Rev. 681, 702-16 (2011) (hereinafter "Freiwald, *Location Data*"). Specifically, as more location data points are collected in the same time frame, they paint an increasingly rich and complete picture of where a target has been. Location data richness has increased dramatically as, in addition to location data at the start and end of calls, location data is collected during a call (duration data) and when phones periodically register with nearby cell sites (registration data). *See* Freiwald, *Location Data,* at 704-08. The Government has requested registration and duration data in several recent cases. *See, e.g., United States v. Benford*, No. 2:09 CR 86, 2010 WL 1266507, *1 (N.D. Ind. Mar. 26, 2010) (describing the information sought as data "identifying which cell tower communicated with the cell phone while it was turned on")*; Third Circuit Opinion*, 620 F.3d at 308 (quoting application as seeking

5

"without limitation . . .call hand ffs, registrations and connection records");;*In the Matter of the Application of the United States For And [sic] Order: (1) Authorizing Use of a Pen Register and Trap and Trace Device; (2) Authorizing Release of Subscriber and Other Information; and (3) Authorizing the Disclosure of Location Based Service*s 727 F. Supp. 2d 571, 579 (W.D. Tex. 2010) (hereinafter "*Austin Opinion*")(describing government's application as seeking "*the exact location of the Target Devices* (differentiated from the first or last cell-site used to make or receive a call, which simply identifies the location of the third party Provider's infrastructure)").

The government's applications in this case requested both registration data and duration data. They sought registration information, or continuous location data to track the target phone over a two month period, whether the phone was in active use or not. See Government Response, Tab C, page 2, esp, fn,3. The government in "pinging" actively reached into the phone to make it broadcast even when it was not in use. This collection of real time location data is nothing more than back door wire-tapping . *United States v. Warshak*, 631 F.3d 266, 335(6ht Cir. 2010)(Keith J..,concurring).

Data precision depends on the density of towers (which has been growing over time), on mathematical techniques (such as triangulation), and on the use of new cell technologies that increase accuracy. *See* Stephanie Pell & Christopher Soghoian, *Can You See Me Now?: Toward Reasonable Standards For Law Enforcement Access to Location Data that Congress Could Enact*, BERK. TECH. L. J. , a v a i l a b l e athttp://papers.ssrn.com/sol3/papers.cfm?abstract_id=1845644 (describing the recent rollout of hundreds of thousands new cell site technologies that increase the accuracy of single cell site location data significantly and in some cases make it even more accurate than GPS data). .

This Court in formulating its views should consider the instructions of the Supreme Court look at cell phone technology as it exists now and as it is developing. *See United States v. Kyllo,* 533 U.S. 27, 36 (2001) ("While the technology used in the present case was relatively crude, the rule we adopt must take account of more sophisticated systems that are already in use or in development."); *see also id.* at 40 (rejecting the idea that the constitutionality of the

7

surveillance should be judged solely on the basis of what occurred in the case at bar, and instead requiring courts to "take the long view" and give "clear specification of  those methods of surveillance that require a warrant");*Jones*, 132 S. Ct. at 956 (Sotomayor, J., concurring) (describing GPS tracking as a "tool . . .. amenable to misuse.").

In sum, location data in general and in this litigation in particular is rich and precise enough to provide a complete and detailed portrait of a target's activities. *See, e.g., Austin Opinion*, 727 F. Supp. 2dat 582 ("[Receipt of [location data] will permit the government to 'follow' the phone user's movements24hours a day, 7 days a week, wherever they go, whatever they are doing."). Based on the  subjective and objective expectations of privacy in location data ,discussed below, this Court should hold that the acquisition of  location data intrudes on reasonable expectations of privacy, constitutes a search under the Fourth Amendment and requires the protections of the warrant requirement.

B.    Subjective Expectations of Privacy in Location Data

Most cell phone users would be unpleasantly surprised, if not outraged, to learn that a law enforcement agent could gain access

8

to their location data without first obtaining a warrant based on a showing of probable cause. Location data, whether the product of GPS monitoring or cell site location data acquisition, "generates a precise, comprehensive records of a person's public movements that reflects a wealth of detail about her familial, political, professional, religious, and sexual associations." *Jones,* 132 S. Ct. at 955 (Sotomayor, J., concurring); *Smith Opinion*, 747 F. Supp. 2d at 838 (describing location data sought by the government as providing "not a single snapshot at a point in time, but a continuous reality TV show, exposing two months' worth of a person's movements, activities and associations in relentless detail.") Knowledge that the government keeps track of such information could easily inhibit valuable and constitutionally protected activities. *See Jones,* 132 S. Ct. at 956 (Sotomayor, J., concurring) (expressing concern about the chilling impact of government "watching" on "associational and expressive freedoms").

Citizens have a subjective expectation of privacy in their location data, and would not expect police to have access to it

without first demonstrating a compelling justification to a reviewing court. Justice Alito's concurrence in *Jones*, joined by Justice Sotomayor, recognized as much in the related GPS context. 132 S.Ct.at964 (Alito, J.,concurring) ("[Society's expectation has been that law enforcement agents and others would not –and indeed, in the main, simply could not –secretly monitor and catalogue every single movement of an individual's car for a very long period."); *see also United States v. Karo*, 468 U.S. 705, 735 (1984) (Stevens, J., concurring in part and dissenting in part) ("As a general matter, the private citizen is entitled to assume, and in fact does assume, that his possessions are not infected with concealed electronic devices.").

C.    Objective Expectations of Privacy in Location Data

The objective prong of the reasonable expectation of privacy test ultimately requires this Court to make a normative finding about whether users should be entitled to view the object of the search as private. As Justice Harlan, author of the reasonable expectation of privacy test, explained: "The critical question, therefore, is whether under our system of government, as reflected in the Constitution, we

10

should impose on our citizens, the risks of the electronic listener or observer without at least the protection of a warrant requirement." *United States v. White*, 401 U.S. 745, 786 (1971) (Harlan, J., dissenting). The critical question in this case is whether law enforcement agents may use cell phone technology as a means to conduct constant surveillance of our citizens without the procedural limits imposed by the Fourth Amendment. The answer must be "no."

In the *Warshak* case, the Sixth Circuit the court recognized that "[a]s some forms of communication begin to diminish, the Fourth Amendment must recognize and protect nascent ones that arise." *United States v. Warshak,* 631 F.3d 266, 286 (6th Cir. 2010). The court found that e-mail "plays an indispensable partinthe Information Age," *id*., andthat it "requiresstrongprotectionunder the Fourth Amendment; otherwise, the Fourth Amendment would prove an ineffective guardian of private communication, an essential purpose it has long been recognizedtoserve." *Id*. The *Warshak* court's recognition that"the Fourth Amendment must keep pace with the inexorable march of technological progress, or its guarantees will wither and perish," *id*. at 285 (citing *Kyllo*, 533 U.S. 27, 34 (2001)), supports a finding of an

objective expectation of privacy in location data.  *See also E.D.N.Y. Opinion*, 809 F. Supp. 2d at 126 ("[E]stablished normative privacy considerations support the conclusion that the reasonable expectation of privacy is preserved here, despite the fact that cell-site-location records [are] disclosed to cell-phone service providers.").

By analogy, users have an objectively reasonable expectation of privacy in their location data.  Just as the Supreme Court recognized that warrantless government eavesdropping violated the privacy on which the target "justifiably relied" while using the telephone booth, *Katz v. United States*, 389 U.S. 347, 353 (1967), so warrantless access to location data would violate the privacy on which cell phone users justifiably rely while using their cell phones. *Jones,* 132 S. Ct. at 964 (Alito, J., concurring) (finding that the GPS tracking in the case "involved a  degree of intrusion that a reasonable person would not have anticipated.")  When describing government acquisition of telephone conversations as a search under the Fourth Amendment, the Supreme Court in *Katz* reasoned that "[t]o read the  Constitution more narrowly is to ignore the vital role that the public telephone has come to play in private communication," 389 U.S. at 352.  To deny Fourth

Amendment protection to location data would similarly ignore the vital role that mobile telephony has come to play in the lives of the over 322 million wireless subscribers in the United States. *See* CTIA Consumer Info, 50 Wireless Quick Facts, http://www.ctia.org/consumer_info/index.cfm/AID/10323 (cited by *Jones,* 132 S. Ct. at 963 (Alito, J., concurring)).

Location data acquisition shares those features of other types of electronic surveillance that the Supreme Court and lower courts have found to require high procedural hurdles and extensive judicial oversight. In *Berger*, the Supreme Court explained that electronic eavesdropping techniques presented "inherent dangers" and therefore required more "judicial supervision" and "protective procedures" than even "conventional" searches. *See Berger v. New York*, 388 U.S. 41, 60 (1967); *see also id*. at 64 (noting that New York statute permitting eavesdropping with insufficient judicial oversight constituted a "general warrant" in violation of the Fourth Amendment).[1] When they determined that the Fourth Amendment required the same procedural

---

[1] In fact, law enforcement agents seeking location data should perhaps satisfy the heightened procedural requirements imposed on government wiretappers. *See* Freiwald, *Location Data*, at 747-48.

13

hurdles for some uses of silent video surveillance, several federal Courts of Appeal elaborated on which features necessitated heightened judicial oversight. Judge Posner, in a decision for the Seventh Circuit whose reasoning was widely followed, explained that the *hidden, continuous, indiscriminate*, and *intrusive* nature of electronic surveillance raises the likelihood and ramifications of law enforcement abuse. *See United States v. Torres*, 751 F.2d 875, 882-84 (7th Cir. 1984);(allowing the surveillance but cautioning "[I]t is inarguable that television surveillance is exceedingly intrusive ... and inherently indiscriminate, and that it could be grossly abused –to eliminate personal privacy as understood in modern western nations.").

When government agents acquire location data they use a technique that is similarly hidden, continuous, indiscriminate and intrusive. Unlike the search of a home, which is usually subject to view either by the occupant of the home or his neighbors, government acquisition of location data is *hidden*. Just as a telephone user does not know when a law enforcement agent wiretaps his call, a cell phone user does not know when a law enforcement agent acquires his location information. That significantly raises the risk that agents will exceed

14

the scope of a proper investigation with impunity. Justice Sotomayor raised the same concern with GPS monitoring in *Jones*. *See* 132 S. Ct. at 956 (Sotomayor, J., concurring) ("And because GPS monitoring... by design, proceeds surrepti tiously, it evades the ordinary checksthatconstrain abusive law enforcement practices: 'limited police resources and community hostility.'")(quoting *Illinois v. Lidster*, 540 U.S. 419, 426 (2004)).

In addition, location data reveals information over a *continuous* period, as do telephone conversations and video surveillance footage. The longer the period an investigation spans, the greater the likelihood that the government will conduct surveillance without sufficient justification. To address that risk, the Supreme Court required that electronic surveillance orders issue for a limited period of time and cease as soon as the constitutional justification ceases. To apply for a renewal, agents must satisfy the same requirements as those imposed on initial requests.

*See Berger*, 388 U.S. at 59. When location data spans a period of time, such as the 60 day period the government requested in its applications, its acquisition should also be subject to constitutional

15

limits.

Besides being hidden and continuous, acquisition of location data is inherently *indiscriminate* in that much of the information obtained will not be incriminating. Just as the wiretapping of traditional telephone calls acquires non-incriminating conversations and video surveillance footage includes numerous innocent scenes, location data may reveal many movements and activities that are entirely unrelated to criminal actions.

The government appears to seek information about apparently innocent parties regularly. According to an industry lawyer, "With respect to location information of specific users, many orders now require disclosure of the location of all of the associates who called or made calls to a target." *See* Al Gidari, Jr., *Symposium: Companies Caught in the Middle, Keynote Address*, 41 U.S.F. L. Rev. 535, 557 (2007). The risk of acquiring information about nonincriminating activities mandates substantial judicial oversight to reduce unwarranted invasions of privacy and to ensure that searches not become government fishing expeditions. *See Jones,* 132 S. Ct. at 956 (Sotomayor, J., concurring) ("[T]he government's unrestrained power

to assemble data that reveal private aspects of identity is susceptible to abuse.")

As already discussed, law enforcement acquisition of location data has the potential to be extremely *intrusive* in that it may disclose a detailed record of a target's movements. The government's ability to draw inferences about a target's activities from his movements enhances the intrusive nature of location data. As discussed above, uninvited and virtually constant government observation of one's movements implicates constitutional privacy rights, the right to travel, and First Amendment rights of association and expression. Though location information differs from telephone conversations and videotaped footage, its acquisition shares the intrusive character of wiretapping and video surveillance. Because of that, it must be subject to heightened requirements, and at least a warrant, so that the government does not needlessly intrude on valuable privacy rights. *See Jones,*132 S. Ct. at 956 (Sotomayor, J., concurring) (cautioning against the Executive acting free of oversight "in light of the Fourth Amendment's goal to curb arbitrary exercises of policy power and prevent a 'too permeating police surveillance'") (quoting *United States*

17

*v. Di Re*, 332 U.S. 581, 595 (1948)).

As the preceding discussion shows, government acquisition of location data shares the same features of wiretapping, bugging and silent video surveillance that make those investigative methods particularly invasive and particularly subject to abuse. In recognition of that, requiring that law enforcement agents demonstrate probable cause to a neutral magistrate before they may compel the disclosure of location data is the minimum constitutional safeguard.

**II.** **THE GOVERNMENT DOES NOT ADVANCE A COMPELLING REASON NOT TO VIEW ACQUISITION OF LOCATION DATA AS A SEARCH**

**A.** **A third party rule does not apply to acquisition of location data**

Contrary to the government's claim, *see* Gov. Response at 6-8, no third party rule excuses the government from the constitutional requirement of a warrant. The Sixth Circuit persuasively limited application of any "third party" rule in the recent *Warshak* case, 631 F.3d 266, 288 (6th Cir. 2010), and the Third Circuit found it inapplicable to location data in its recent decision. *See Third Circuit Opinion*, 620 F.3d at 317-18. None of the government's arguments calls either persuasive precedent

18

into question. The government fails to establish that either *United States Miller*, 425 U.S. 435 (1976), or *Smith v. Maryland*, 442 U.S. 735, 743-44 (1979), governs location data, particularly in light of Justice Sotomayor's discussion of those very cases in *Jones*.

Essentially, the government urges this court to find records containing location data to be analogous to the bank records that the Supreme Court found unprotected by the Fourth Amendment in *Miller*. *See* Gov. Brief at 17-18 (relying on the *Miller* case). By characterizing location data as the "business records of the provider," *id.* at 17, the government presses for an analytical short-cut, by which a few lower courts have rejected constitutional protection for "third party records" without fully conducting an inquiry into reasonable expectations of privacy. *See generally*, Susan Freiwald, *First Principles of Communications Privacy*, 2007 Stan. Tech. L. Rev. ¶36-¶44 (criticizing courts for using third party rule to avoid reasonable expectations of privacy analysis.) The government also claims that *Smith v. Maryland* precludes Fourth Amendment protection

19

for location information because users voluntarily convey it to
service providers in the same way that telephone users conveyed
telephone numbers to the phone companies in 1979. Gov. Brief
at 18-23.

The Third Circuit, which is the first federal appellate court
to consider the Fourth Amendment regulation of historical
location data, squarely rejected the application of both *Miller*
and *Smith* to location data. *See, Third Circuit Opinion*, 620
F.3d at 317. The Third Circuit rejected that idea that a cell
phone user "voluntarily expose[s]" his location data in the same
way that he exposes the telephone numbers that he dials. *Id.* at
317-18. The Eleventh Circuit in Davis rejected the logic of
voluntary exposure in the location context and held that cell site
location evidence is within the subscriber's reasonable
expectation of privacy. The obtaining of that data without a
warrant was held to be Fourth Amendment violation. The
government may argue that users voluntarily expose their
location data because they are purportedly aware that it is
generated. Whatever awareness users have of their providers

'practices, however, they do not assume the risk that their location data will be retained and disclosed to government agents without a warrant. *See Jones,* 132 S. Ct. at 964 (Sotomayor, J., concurring) ("Those who disclose certain facts to a bank or phone company for a limited business purpose need not assume that this information will be released to other persons for other purposes.") (quoting *Smith*, 442 U.S. at 747 (Marshall, J., dissenting)).

Moreover, because location data reveals so much more information than the limited information conveyed by dialed telephone numbers, the *Smith* decision is inapposite. *See, e.g., United States v. Forrester*, 512 F.3d at 500, 511 (9th Cir. 2008) (stating that its holding "does not imply that more intrusive techniques . . . are also constitutionally identical to the use of a pen register."). As discussed above, location data is much closer to the GPS data that the *Jones* Court found to be protected by the Fourth Amendment despite the fact that it is non-content data[2]. *See Jones,* 132 S. Ct. at 964 (Sotomayor,

---

[2]But the government did misuse the pen register authority by collecting content. In asking for " post cut through numbers" i.e. the numbers entered

21

concurring) (calling the approach in *Smith* and *Miller* "ill suited to the digital age").

In a similar context, the Sixth Circuit rejected the government's argument that a "third party rule" defeats an email user's expectation of privacy. According to the *Warshak* panel, an email user does not convey his email to his service provider to be put "to use 'in the ordinary course of business.'"*Warshak*, 631 F.3d at 288. Instead, the service provider is a mere "intermediary, not the intended recipient of the emails," whose access does no defeat the user's reasonable expectation of privacy. *See id.* (citing Patricia L. Bellia & Susan Freiwald, *Fourth Amendment Protection for Stored E-Mail,* 2008 U. Chi. Legal F. 121, 165 (2008)). Similarly, a cell phone service provider is much more like an intermediary who processes location data in order to facilitate cell phone users 'communications with *other people.* Service providers are quite distinct from the bank in *Miller,* which the Supreme Court

---

after the call connects, the government intercepts exactly content. Those numbers are likely passwords or bank account numbers. See, *In Re Applications*, 515 F. Supp 2d 325(E.D.N.Y. 2007)( no authority to seek post cut through dialed digits by pen register order)/

22

considered to be a party to the transactions with the defendant that generated the records. *See Miller*, 425 U.S. at 440-41 ("The records of respondent's accounts ... pertain to transactions to which the Bank itself was a party.") The analogy that the Supreme Court drew between Miller's confiding in the bank and a person confiding in his friends, *id.* at 443, does not describe the way in which location data is generated. *See Smith Opinion*, 747 F. Supp. 2d at 844 ("Cell site data is generated automatically by the network, conveyed to the provider not by human hands, but by invisible radio signal.")

The *Warshak* panel persuasively reasoned that a user's consent to service provider access to email does not forfeit a reasonable expectation of privacy vis-àvis law enforcement access. Service provider access is sufficiently extensive "to snuff out a reasonable expectation of privacy" only in limited situations, such as when the provider "expresses an intention to 'audit, inspect and monitor' its subscriber's emails." *Warshak*, 631 F.3d at 287. Notably, the Sixth Circuit rejected a monolithic expectation of privacy that is defeated whenever the information

23

at issue is seen by anyone. Instead, and appropriately, the court recognized that we may permit a service provider to run its business without relinquishing the protections of the warrant requirement: the interposition of a neutral magistrate to review the propriety and need for the government to pry into our personal communications.

Applying that approach to location data means that just because the service provider may retain access to our location information does not mean that we waive a reasonable expectation of privacy in that data vis-à-vis law enforcement access. Permitting a service provider to access information to run its business does not imply consent to give up Fourth Amendment protections. *See, e.g.*, *Warshak*, 631 F.3d at 287 ("[U]nder *Katz*, the degree of access granted to [the service provider] does not diminish the reasonableness of Warshak's trust in the privacy of his emails."). The government may seek to distinguish *Jones*, which recognized a constitutional privacy interest in location data, primarily based on its claim that its applications mainly sought

historical records rather than prospective tracking. In truth it sought both. The government's distinction, though currently reflected in the federal surveillance statute, is not of constitutional significance. In fact, law enforcement acquisition of historical location data can intrude into personal privacy even more than acquisition of real-time or prospective location information. A law enforcement agent seeking prospective location data could get an order on January 1 to track the target's movements for three months, but then would have to wait until March 31 to obtain three months of location data to review. Alternatively, the agent could ask the provider for historical data and immediately obtain a year's worth or more of the target's location information.

## II. EVEN IF THE GOOD FAITH EXCEPTION APPLIES, THIS COURT SHOULD DECIDE THE FOURTH AMENDMENT QUESTION.

The good faith exception of *Leon* need not be applied here. After all the rational for the exception is that we cannot expect the ordinary constable to function as a lawyer. He should be able, in good faith, to rely on the legality of the warrant that the

25

prosecutor writes and that a judge approves. That rational has much less force here where a trained lawyer is, for example, artfully combining the pen register statute with the Stored Communication Act

This Court should decide that a search of long-term historical cell site location data requires a probable cause warrant regardless of whether the good faith exception applies. When a case presents a "novel question of law whose resolution is necessary to guide future action by law enforcement officers and magistrates, there is sufficient reason for the Court to decide the violation issue *before* turning to the good-faith question." *Illinois v. Gates*, 462 U.S. 213, 264, 265 n. 18(1983) (White, J., concurring) (citing *O'Connor v. Donaldson*, 422 U.S. 563 (1975) (finding a constitutional violation and remanding for consideration of the good faith defense)). This is just such a case. Cell site location tracking has become a favored tool of law enforcement and is already used far more frequently than the GPS tracking technology in *Jones*. Its highly intrusive nature cried out for clear judicial regulation. A district court explicitly

invited clarification about whether "an aggregation of surveillance records infringes a Fourth Amendment legitimate expectation of privacy." *Graham*, 846 F. Supp. 2d at 394.

In *Warshak*, the Sixth Circuit explained the importance of addressing important Fourth Amendment issues even when the good faith exception will ultimately apply:

> Though we may surely do so, we decline to limit our inquiry to the issue of good faith reliance. If every court confronted with a novel Fourth Amendment question were to skip directly to good faith, the government would be given *carte blanche* to violate constitutionally protected privacy rights, provided, of course, that a statute supposedly permits them to do so. The doctrine of good-faith reliance should not be a perpetual shield against the consequences of constitutional violations. In other words, if the exclusionary rule is to have any bite, courts must, from time to time, decide whether statutorily sanctioned conduct oversteps constitutional boundaries.

631 F.3d at 282 n. 13 (citation omitted). The Sixth Circuit's logic is not novel: courts frequently decide whether there has been a Fourth Amendment violation before applying the good faith exception. For example, a Court recently decided that warrantless extraction and testing of DNA from a person's clothing violates the Fourth Amendment, and only then did it apply the good faith exception to the exclusionary rule. *United*

*States v. Davis*, 690 F.3d 226, 247-57 (4th Cir. 2012). Similarly, when assessing whether search warrants satisfy the Fourth Amendment's probable cause and particularly requirements, courts frequently find a Fourth Amendment violation *before* turning to the good faith doctrine. *See, e.g., United States v. Harris*, 215 F. App'x 262, 269-73 (4th Cir. 2007); *United States v. Clark*, 638 F.3d 89, 91 (2nd Cir. 2011); *United States v. Tracey*, 597 F.3d 140, 146-54 (3d Cir. 2010). This approach is no less appropriate in the location tracking context. *See Powell*, 2013 WL 1876761, at *11-20 (holding that government lacked probable cause to engage in cell phone location tracking, and then applying good faith exception); *United States v. Ford*, No. 1:11-CR-42, 2012 WL 5366049, at *7-11 (E.D. Tenn. Oct. 30, 2012) (determining that warrantless GPS tracking violates the Fourth Amendment, and then applying good faith exception).

Phone companies have been inundated with law enforcement requests for location data in recent years: from 2007 and 2012, for example, Sprint/Nextel received nearly 200,000 court orders for cell phone location information. As the use of

28

cell phones becomes ubiquitous and cell site location information becomes ever-more precise, it is crucial for courts to provide guidance to law enforcement and the public about the scope of the Fourth Amendment. The issue is now before this Court, and addressing it would yield much needed clarity in this Circuit.

## CONCLUSION

Location data may provide an essential tool to government agents engaged in law enforcement. Just as with wiretapping, some silent video surveillance, and conventional searches, however, acquisition of location information must be subject to Fourth Amendment safeguards, because users have a reasonable expectation of privacy in their location data, whether the data is prospective or historical. When government agents acquire location data, they do so in a manner that is hidden, intrusive, indiscriminate and continuous. Therefore, location data acquisition must be subject to at least the protections of a warrant based on a showing of probable cause. Neither a third party rule nor the fact that location data disclosure is compelled obviates the warrant requirement. This court should deny the

29

government's use of location data collected without a warrant based on probable cause.

Respectfully submitted,

/s/ Michael James Falconer

31