IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| United States of America ) | |
| ) | |
| ) | 13 CR 952-1 |
| v. ) | |
| ) | Judge Kocoras |
| Eric Rogers , ) | |

ROGERS' MOTION TO SUPPRESS STATEMENTS

Eric Rogers, by attorney Michael James Falconer moves to suppress statements attributed to him. The statements were the product of coercion and not voluntary.

1. Rogers was arrested on or about 12.15.2013.

2. Well before his arrest [ even well before any alleged crime ] Rogers was sick. During that evening Rogers was driving on a shopping trip with Eric Curtis and Kristine Butler . Rogers told the others he was ill and needed to lie down in the back. Ms. Butler corroborates these facts in her statement.

3. Rogers believes he was sick and disoriented from smoking an extremely strong form of marijuana called "kush". The kush was made even more potent by being laced with K-2. K-2 is a dangerous synthetic drug which has caused hallucinations and numerous emergency room visits.[1]

---

[1]

**July 27, 2014** – The Health Department today warned New Yorkers not to use synthetic cannabinoids after becoming aware since Thursday night of 15 people experiencing severe adverse reactions to suspected ingestion of the products. Synthetic cannabinoids, marijuana-like substances

4. At the time of his arrest Rogers was clearly in distress including dry heaves. The police brought him to Edward Hospital in Naperville.

5. Rogers is unsure of what drugs or medicine, if any, he was given at Edward Hospital but he is aware he was put on an IV. **NB.** The undersigned counsel for Rogers has ordered the medical records. He will produce those records to the government and file them with the Court.

6. Rogers, on information and belief, alleges he was taken from the hospital against medical advice[2]. Although he was in distress, he recalls the police telling the treating physician that 'this case was too important and that they needed to get Mr. Rogers in for interrogation right away'. They brought him to the Woodridge police station.

7. At the police station Rogers still felt sick and disoriented. Police reports describe him lying on the floor in a fetal position with a bucket to vomit in. He had difficulty holding his head up and only wanted to lie down to get some relief. When the police informed him they anted to take a statement

---

which were made illegal in 2012 and are meant to imitate the effects of marijuana, are known by several street names, including K2, Spice, Green Giant, Geeked Up, Caution, Smacked, Wicked X, AK-47 and "legal marijuana." The Department has seen a 220% increase in emergency department visits related to synthetic cannabinoids in 2014. In the last two days, 15 emergency department visits related to possible ingestion of synthetic cannabinoids have occurred among residents of East Harlem, Central Harlem and Chelsea. *See,* http://www.nyc.gov/html/doh/html/pr2014/pr023-14.shtml ( last visited May 13, 2015)

[2]The Woodridge Police Department report essentially says Rogers was malingering and a doctor said there was no medical reason for his complaints. The release was on a form provided by the police.

from he tried his best to be alert and attentive.

8. During the course of his interrogation Rogers made statements which the police believed were wrong, numerous times the police insisted he change his version to their version. Rogers feeling sick and disoriented was told by the police that they would allow him to lie down only if he cooperated by agreeing to their version. Rogers finally gave in to the police coercion and made a statement which agreed with the police version.

9. Immediately after making the statement Rogers realized he had given in to police pressure and said things which were not accurate. Rogers then insisted he be allowed to make his own statement. The police let him make another statement but again applied the same coercive pressures to force numerous 'corrections'. Again the quid pro quo was *you say what we want and we will let you be sick in peace.*

10. A defendant may waive her *Miranda* rights only if that waiver was made "voluntarily, knowingly and intelligently." *Moran v. Burbine*, 475 U.S. 412, 421 (1986). The Seventh Circuit has held that a confession is voluntary if, under all the circumstances, it is the "product of a rational intellect and free will and not the result of physical abuse, psychological intimidation, or deceptive interrogation tactics that have overcome the defendant's free will." *United States v. Dillon*, 150 F.3d 754, 757 (7th Cir. 1998). A finding that the police engaged in coercive activity is an essential predicate to a finding that a suspect's confession was involuntary. See, *Colorado v. Connelly* 479 U.S. 157,

167 (1986) Courts determine whether police coerced a suspect by examining things like "the defendant's age, education, intelligence level, and mental state; the length of the defendant's detention, the nature of the interrogations; the inclusion of advice about constitutional rights; and the use of physical punishment, including deprivation of food or sleep." *United States v. Huerta*, 239 F.3d 865, 871 (7th Cir. 2001). When the interrogating officers should reasonably have known that a suspect was under the influence of drugs or alcohol, "a lesser quantum of coercion may be sufficient to call into question the voluntariness of the confession." *United States v. Haddon* 927 F.2d 942, 946' (7th Cir. 1991).

Respectfully submitted,

/s/ Michael James Falconer
an attorney for Eric Rogers

ARDC #6185458
Michael James Falconer
35 East Wacker Dr. #650
Chicago, IL 60601
312.236.7177
mfalconer@prodigy.net

# AFFIDAVIT

I, Eric Rogers, after first being sworn upon oath state:

1. I have read the attached *ROGERS' MOTION TO SUPPRESS STATEMENTS*. The facts recited there are true.

2. On the day of my arrest, 12-15/2015 I had not slept for several days. I had been binging on drugs including a very strong form of marijuana called "kush". The kush was itself laced with a drug called "K-2"

3. I was feeling sick, tired, dizzy and nauseous. I was riding around with Eric Curtis and a woman named Kristine Butler.

4. I felt so sick I could no longer sit up. I stopped the vehicle so I could lie down in back.

5. At the moment of my arrest and continuing for hours after, I was vomiting and feeling very sick.

6. The police took me to the hospital where I was examined and put on an IV. I do not know if I was given any medicine.

7. While I was still in treatment, I heard the police tell my doctor that this case was too important to waste time and that they needed the doctor to release me so that the police could question me.

8. At the police station I could not sit without pain and nausea. I was lying on the floor with a bucket to throw up into.

9. When the police came to question me I was still in bad shape and needed to lie down. I tried to pay attention, be alert and pay attention because I knew it was important but I just wanted it to be over so I could lie down and feel better.

10. I told the police I was too sick to talk but they insisted that as soon as I gave them a statement they would leave me alone and let me lie down. I gave in.

11. A number of times during the statement they insisted I change my statement to what they wanted, each time they said I could not sleep or lie down until I did said what they wanted me to say. Each time I gave in to their pressure.

The affiant says nothing further

So sworn upon my oath and to be reaffirmed in open court.

_____

Date: _____